IN THE MATTER OF: A.S. AND M.J.W., MINOR CHILDREN

No. COA06-1028

(Filed 20 February 2007)

**1. Child Abuse and Neglect— failure to receive proper care or supervision—abuse language mistakenly included in order**

Although the trial court did not err by concluding that respondent father neglected both of his minor children, it erred by concluding that he abused M.W., because: (1) the minor children did not receive proper care or supervision and they lived in an environment injurious to their welfare; and (2) a review of the transcript revealed that language that could be interpreted that respondent abused M.W. was mistakenly included in the written adjudication order.

**2. Child Abuse and Neglect— neglect—removal of custody— visitation**

The trial court did not err in a child neglect case by removing custody of A.S. from respondent father and by denying unsupervised visits with M.W., because: (1) the trial court found that DSS made reasonable efforts to prevent or eliminate the need for placement with DSS, to reunify this family, and to implement a

**IN RE A.S. & M.J.W.**

[181 N.C. App. 706 (2007)]

permanent plan for the minor child; and (2) the court found that the conditions which led to the kinship placement of both minor children still existed and that the return of the minor children to the home would be contrary to the welfare of the children.

**3. Child Support, Custody, and Visitation— support—order to contact child support enforcement agency—absence of authority**

The trial court erred by ordering respondent father to contact the child support enforcement agency without first establishing an appropriate amount of child support, because although a trial court may order a parent to pay a reasonable sum that will cover in whole or in part the support of a juvenile, N.C.G.S. § 7B-904(d) does not provide the trial court with authority to order respondent to contact a child support enforcement authority.

**4. Child Abuse and Neglect— psychological evaluation—substance abuse assessment—parenting classes—best interests of child**

The trial court did not abuse its discretion in a child neglect case by ordering respondent father to undergo a psychological evaluation, have a substance abuse assessment, and enroll in parenting classes, because: (1) the trial court found that it was in the best interests of the minor children; and (2) DSS and the guardian ad litem recommended that it was in the best interests of the children.

Judge LEVINSON concurring in part and dissenting in part.

Appeal by respondent-father from judgments and orders entered 24 May 2006 by Judge Marvin P. Pope in Buncombe County District Court. Heard in the Court of Appeals 8 January 2007.

*Michael E. Casterline for respondent-father appellant.*

*Michael N. Tousey for Guardian ad Litem appellee.*

*Matthew J. Middleton for Buncombe County Department of Social Services, petitioner appellee.*

McCULLOUGH, Judge.

Respondent-father appeals from two district court adjudication judgments and dispositional orders that he abused and neglected M.W. and neglected A.S. We affirm in part and remand in part.

IN RE A.S. & M.J.W.

[181 N.C. App. 706 (2007)]

## FACTS

Respondent-father ("respondent") is the biological father of A.S. and M.W. K.M. is the mother of A.S. and C.W. is the mother of M.W. Respondent and K.M. lived together with their child A.S. Pursuant to an agreement reached in September 2005 between respondent and C.W., M.W. stayed in the home of respondent and K.M. for a week at a time and then would live with C.W. for a week at a time.

On 7 February 2006, K.M. was at home with A.S. and M.W. She had given M.W. a bath and the child was fussy. K.M. became frustrated and pushed M.W. to the ground. The back of her head hit the floor and she became unresponsive. An ambulance was called and M.W. was transported to the emergency room for treatment of her head injuries. Detective Rickman of the Buncombe County Sheriff's Department interviewed K.M., and based on her admissions he placed her under arrest.

K.M. admitted to Social Worker Jo Ann Amato and Detective Rickman that on five previous occasions she had hurt M.W. by placing her down forcefully in her crib. She stated she knew she had hurt M.W. because the child winced and began to cry.

During the investigation, respondent admitted that K.M. had thrown objects such as a remote control and an alarm clock at him during the last several months in their home. On one occasion, respondent called law enforcement to their home because he felt that K.M. posed a danger to herself and to others. Law enforcement recommended that he go to the magistrate and have her involuntarily committed. He was unsuccessful. On another occasion, respondent admitted that he had to restrain K.M. after she became extremely agitated. Respondent was aware that K.M. was prescribed antidepressant medication for depression and knew that she had not been taking the medication consistently as prescribed.

On 24 February 2006, the Buncombe County Department of Social Services ("DSS") filed two verified juvenile petitions alleging that A.S. was a neglected child and that M.W. was an abused and neglected child. The matter was heard on 26 April 2006 and 28 April 2006. The trial court found that A.S. was a neglected child pursuant to N.C. Gen. Stat. § 7B-101(15) (2005) and that M.W. was an abused and neglected child pursuant to N.C. Gen. Stat. § 7B-101(1), (15).

Respondent appeals.

## I.

**[1]** Respondent contends the trial court erred in concluding that A.S. was neglected and that M.W. was abused and neglected. We agree in part and disagree in part.

Respondent did not assign error to any findings of fact by the trial court, so the findings are presumed to be supported by competent evidence and are binding on appeal. *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). "The trial court's 'conclusions of law are reviewable *de novo* on appeal.'" *In re J.S.L.,* 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (citation omitted). We must determine whether the conclusions of law are supported by the findings of fact. *In re J.G.B.,* 177 N.C. App. 375, 381, 628 S.E.2d 450, 454 (2006).

We will first discuss the issue of whether the trial court correctly concluded that respondent neglected both A.S. and M.W. Then, we will discuss whether the trial court correctly concluded that respondent abused M.W.

### A. Neglect

The North Carolina General Statutes define a neglected juvenile as:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15).

The trial court concluded that respondent neglected both M.W. and A.S. because the minor children did not receive proper care or supervision and they lived in an environment injurious to their welfare. We believe the findings of fact support the trial court's conclusion. With regard to both M.W. and A.S., the trial court found that respondent felt that K.M.'s behavior had made her a danger to herself and to others. Respondent admitted that K.M. had thrown household

objects at him. Respondent even called law enforcement because of K.M.'s violent, erratic behaviors. Therefore, M.W. and A.S. were living in an environment injurious to their welfare. Accordingly, we disagree with respondent's contention regarding neglect.

### B. Abuse

The North Carolina General Statutes define an abused juvenile as:

[a]ny juvenile less than 18 years of age whose parent . . . or caretaker:

a.  inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means; [or]

b.  creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]

N.C. Gen. Stat. § 7B-101(1)(a), (b).

In the written adjudication order, the trial court included language that could be interpreted that respondent abused M.W. However, after reviewing the trial court's transcript, it appears that the language was mistakenly included in the written adjudication order. In addition, DSS stated in its brief that the "trial court did not find that the respondent . . . abused M.W. and such a finding of abuse was mistakenly included by the Department's attorney in the draft judgment." We agree and therefore remand this case to the trial court to amend the order.

### II.

[2] Respondent next contends that the trial court erred in removing custody of A.S. from respondent and in denying unsupervised visits with M.W. on the basis that there was no evidence of neglect or abuse by respondent. We disagree.

After the incident on 7 February 2006, both of respondent's children were placed out of his home. A.S. was placed in a kinship placement with respondent's family. Respondent's visitation with A.S. was not limited. M.W. was placed with her mother, C.W., and respondent's visitation with M.W. was limited to two supervised visits per week.

The North Carolina General Statutes state:

Any dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker, or

under which the juvenile's placement is continued outside the
home shall provide for appropriate visitation as may be in the
best interests of the juvenile and consistent with the juvenile's
health and safety. If the juvenile is placed in the custody or place-
ment responsibility of a county department of social services, the
court may order the director to arrange, facilitate, and supervise
a visitation plan expressly approved by the court. If the director
subsequently makes a good faith determination that the visitation
plan may not be in the best interests of the juvenile or consistent
with the juvenile's health and safety, the director may temporar-
ily suspend all or part of the visitation plan. The director shall not
be subjected to any motion to show cause for this suspension, but
shall expeditiously file a motion for review.

N.C. Gen. Stat. § 7B-905(c) (2005).

In the instant case, the trial court did not err. In regard to both
A.S. and M.W., the trial court found that DSS made reasonable efforts
to prevent or eliminate the need for placement with DSS, to reunify
this family, and to implement a permanent plan for the minor child. In
addition, the court also found that the conditions which led to the
kinship placement of both minor children still exist, and that the
return of A.S. or M.W. to the home would be contrary to the welfare
of the children. Therefore, we disagree with respondent's contention.

### III.

**[3]** Respondent contends the trial court erred by ordering respond-
ent to contact the child support agency without first establishing an
appropriate amount of child support. We agree.

The North Carolina General Statutes provide that

when legal custody of a juvenile is vested in someone other than
the juvenile's parent, if the court finds that the parent is able to
do so, the court may order that the parent *pay a reasonable sum
that will cover, in whole or in part, the support of the juvenile
after the order is entered.* If the court requires the payment of
child support, the amount of the payments shall be determined as
provided in G.S. 50-13.4(c).

N.C. Gen. Stat. § 7B-904(d) (2005) (emphasis added). In *In re Cogdill*,
137 N.C. App. 504, 528 S.E.2d 600 (2000), the trial court ordered the
respondent to "contact the Child Support Enforcement Department
and . . . file the necessary paperwork to begin paying child support[.]"

*Id.* at 508 n.3, 528 S.E.2d at 602 n.3. In interpreting the previous version of N.C. Gen. Stat. § 7B-904(d), we stated:

> Although section 7A-650 provides that a trial court may order a parent to '*pay a reasonable sum that will cover in whole or in part the support of the juvenile*,' the statute does not provide the trial court with authority to order a parent to contact a child support enforcement department.

*Id.* at 508 n.3, 528 S.E.2d at 603 n.3 (emphasis added) (citation omitted). We modified the trial court's order to exclude this portion of the order. *Id.*

In the instant case, the trial court ordered respondent to contact the Child Support Enforcement Agency and to pay child support for the benefit of A.S. and M.W. N.C. Gen. Stat. § 7B-904(d) does not provide the trial court with authority to order respondent to contact a child support enforcement authority. Therefore, we remand this case to the trial court to amend the order.

## IV.

**[4]** Respondent finally contends the trial court erred in ordering respondent to undergo a psychological evaluation, have a substance abuse assessment and enroll in parenting classes. We disagree.

The North Carolina General Statutes permit the trial court at its discretion to

> determine whether the best interests of the juvenile require that the parent . . . undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent . . . . If the court finds that the best interests of the juvenile require the parent . . . [to] undergo treatment, it may order that individual to comply with a plan of treatment[.]

N.C. Gen. Stat. § 7B-904(c).

In the instant case, the trial court was within its discretion. The trial court found that it was in the best interest of A.S. for respondent to have a psychological evaluation, participate in and complete parenting classes, and have a substance abuse assessment. Also, the trial court found that it was in the best interest of M.W. for respondent to

**IN RE A.S. & M.J.W.**

[181 N.C. App. 706 (2007)]

have a psychological evaluation and pursue parenting classes. DSS recommended that it was in the best interest of A.S. and M.W. that respondent have a substance abuse assessment, have a psychological evaluation, and engage in parenting classes. Further, the guardian ad litem recommended that it was in the best interest of A.S. and M.W. for respondent to take parenting classes and have a substance abuse assessment. Therefore, we disagree with respondent's contention.

Affirmed in part and remanded in part.

Chief Judge MARTIN concurs.

Jude LEVINSON concurs in part and dissents in part.

LEVINSON, Judge concurring in part and dissenting in part.

I concur in the majority opinion except insofar as it requires the trial court to amend its order. Here, the trial court made the following relevant conclusion of law:

> That by clear, cogent and convincing evidence, the minor child, M.J.W., is an abused child pursuant to N.C. Gen. Stat. § 7B-101(1) in that the minor child has been the victim of physical abuse by [mother], and that [mother] and respondent father inflicted or allowed to [be] inflicted upon the minor child a serious physical injury by other than accidental means. That the minor child is a neglected child pursuant to N.C. Gen. Stat. § 7B-101(15) in that the minor child did not receive proper care or supervision from [mother] and the respondent father, and that the minor child lives in an environment injurious to her welfare when living with [mother] and the respondent father.

The language of this paragraph appropriately concludes that M.J.W. had obtained the status of an abused and neglected juvenile. Moreover, the evidence and the findings of fact support the statements that the child had "been the victim of physical abuse by mother" and that "[mother] and respondent father inflicted or allowed to [be] inflicted upon the minor child a serious physical injury by other than accidental means." No corrections to the order are necessary.

As the parties discuss in their respective briefs, this Court recently published an opinion concerning the adjudication of juveniles' "status" as abused, neglected and/or dependent. *In re J.A.G.*, 172 N.C.

App. 708, 617 S.E.2d 325 (2005) (Levinson, J. concurring) (quoting and applying *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984)). It is nonsensical for trial courts to adjudicate abuse, neglect and/or dependency "as to" certain parents or caretakers. Moreover, as the current order on appeal illustrates, it is unhelpful and confusing for our trial courts to make explicit conclusions of law that a child is abused, neglected and/or dependent "because" named person(s) committed certain acts.

It is the favored practice for trial courts' findings of fact to set forth what certain persons did or did not do. This will suggest the relative culpability of the parents and/or caretakers that can help guide disposition decisions. At the same time, these findings of fact may be useful should one or more of the parties wish to assert collateral estoppel in subsequent hearings. Conclusions of law that a juvenile is abused, neglected and/or dependent need only track the statutory definitions themselves.

The brief for DSS counsel suggests an erroneous assumption that the trial court's conclusions of neglect and abuse are tied to persons other than the juvenile herself. In other words, DSS assumes that a juvenile can, for example, be "abused as to mother" but not "abused as to father." Or that a juvenile can be "neglected as to mother" but not "neglected as to father." The trial court's comments in open court concerning the court order suggest the trial court itself was concerned with whether the juvenile(s) would be abused and/or neglected "as to" one or both of the parents:

> I wanted to clarify the adjudication. We were getting close to the end of the day and I'm not sure I made myself clear. [Mother], there is abuse and neglect conclusively shown as a caretaker of these children—I make specific findings that she was a caretaker of these children—by clear and convincing evidence. With regard to the respondent/father, I find neglect on his part—against both of the children for leaving the children with a caretaker that he knew had a history of domestic violence, of throwing things, and the fact that he actually felt it necessary to try to get her committed for mental illness, and the magistrate did not feel it was appropriate at that time. The significant thing is that the respondent/father felt that an issue existed. And he neglected his—he was caretaker of the child on this week-on, week-off custody arrangement with the respondent/mother, and he was neglectful for leaving the children with her, knowing her propensity for violence. As

**IN RE D.S.A.**

[181 N.C. App. 715 (2007)]

a custodial parent, he was responsible for providing a safe environment for both of his children.

I would affirm the order in all respects.